| | | |
|---|---|---|
| 1 | Law Offices | B 240A - Reaffirmation Agreement |
| | Howard A. Chorost, P.C. | (01/07) |
| 2 | 21 East Speedway Boulevard | |
| | Tucson, Arizona 85705 | ___ Presumption of Undue Hardship |
| 3 | (520) 792-0011 | _x_ No Presumption of Undue Hardship |

4  Howard.Chorost@azbar.org

5  Howard A. Chorost, Esq.
   State Bar of Arizona No. 012663
6  Attorney for Creditor Vantage West Credit Union

7                     United States Bankruptcy Court
                            District of Arizona
8
   In re:                              Case No. 4:07-bk-00407-EWH
9  Antoinette L Moustafi ·
                                       Chapter 7 Proceedings
10             Debtor(s)

11                     **REAFFIRMATION AGREEMENT**
       *[Indicate all documents included in this filing by checking each applicable box.]*
12  X Part A: Disclosures, Instructions, and   X Part D: Debtor's Statement in Support of
       Notice to Debtor (Pages 1 - 5)            Reaffirmation Agreement
13  X Part B: Reaffirmation Agreement          X Part E: Motion for Court Approval
    N/A Part C: Certification by Debtor's
14     Attorney

15  [Note: Complete Part E only if debtor was not represented by an attorney during
    the course of negotiating this agreement. Note also: If you complete Part E, you must
16  prepare and file Form 240B - Order on Reaffirmation Agreement.]

17  Name of Creditor: Vantage West Credit Union

18     X *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of
       the Federal Reserve Act

19  **PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR**

20     1.     **DISCLOSURE STATEMENT**

21  ***Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:***

22  **SUMMARY OF REAFFIRMATION AGREEMENT**

23     This Summary is made pursuant to the requirements of the Bankruptcy Code.

24  **AMOUNT REAFFIRMED**

25     The amount of debt you have agreed to reaffirm:     $26,304.85

26     ***The amount of debt you have agreed to reaffirm includes all fees and costs (if***
27  ***any) that have accrued as of the date of this disclosure.  Your credit agreement may***
    ***obligate you to pay additional amounts which may come due after the date of this***
28  ***disclosure. Consult your credit agreement.***

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

      a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

      (i)  The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:   8.25%.

— *And/Or* ---

      (ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____%;
$ _____ @ _____%;
$ _____ @ _____%.

      b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

      (i)  The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: 8.25%.

— *And/Or* ---

      (ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%.  If different simple interest rates apply to different balances included in the amount reaffirmed,

the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

    c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

> The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

    d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| 2005 Nissan Frontier | 29,321.54 |

*Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $519.38 is due on April 25, 2007, but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

*---Or---*

Your payment schedule will be: _____(number) payments in the amount of $_____ each, payable (monthly, annually, weekly, etc.) on the _____ (day) of each _____ ( week, month, etc.), unless altered later by mutual agreement in writing.

*---Or---*

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

**NOTE:** When this disclosure refers to what a creditor ''may'' do, it does not use the word "may" to give the creditor specific permission. The word ''may'' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

**PART B: REAFFIRMATION AGREEMENT.**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:
Agreement dated June 10, 2006 in regard to a 2005 Nissan Frontier, in the original amount of $29,321.54.

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement: NONE

SIGNATURE(S):

Borrower:                                    Co-borrower, if also reaffirming these debts:

Antoinette L Moustafi                        _____

Date: 4-19-07                                Date: _____

Accepted by creditor:

    Vantage West Credit Union

by: _____
June Diaz by Howard A. Chorost for June Diaz
Vice President

    c/o Howard A. Chorost, P.C.
    21 East Speedway Boulevard
    Tucson, AZ 85705

Date of creditor acceptance: 4/20/07

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

__ [Check box, if applicable and the creditor is not a Credit Union.] A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: Antoinette L. Moustafi

Signature of Debtor's Attorney: _____

Date: _____



**PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

*[Read and complete numbered paragraphs 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read the u-numbered paragraph below. Sign the appropriate signature line(s) and date your signature. If you complete paragraph 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

      1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $ _2,000_ , and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $___⊗___, leaving $ _500.00_ to make the required payments on this reaffirmed debt.

      I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here:

_____

_____

      2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
          Antoinette L Moustafi

Date: _____
          4/19/07

                         — *Or*
*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

**I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.**

**Signed:** _____
          **Antoinette L Moustafi**

_____

**Date:** _____

**PART E: MOTION FOR COURT APPROVAL**
*[To be completed and filed only if the debtor is not represented by an attorney during the course of negotiating this agreement.]*

## MOTION FOR COURT APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions (*check all applicable boxes*):

    ✗    11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

    ___    11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income)

Signed: _Antoinette L Moustafi_
Antoinette L Moustafi

Date: _4/19/07_

**MOTOR VEHICLE RETAIL INSTALLMENT
SALES CONTRACT AND
PURCHASE MONEY SECURITY AGREEMENT**

r(s)/Debtor(s):
ANTOINETTE L MOUSTAFI
6010 S RANDALL BLVD #19
TUCSON AZ 85706

Seller/Creditor:
JIM CLICK FORD INC.
Address: 35 6420 E. 22ND
TUCSON AZ 85710

~5

83 0045b

is an agreement for the installment purchase by you of the Vehicle described below. As used in this Contract, the words "you" and "your" mean the Buyer or Buyers who low. The words "we", "us", "our" and "Seller" refer to the Seller whose name and address appear above or to anyone to whom this Contract is assigned (referred to as the ee"). If the Assignee notifies you that it has purchased this Contract, you agree to make all of your payments to the Assignee. This sale is subject to approval of your credit nd acceptance of this Contract by an Assignee. BY SIGNING BELOW, YOU ALSO AGREE TO ALL OF THE TERMS ON BOTH SIDES OF THIS CONTRACT.
E READ THE BACK CAREFULLY.
hicle which you are purchasing is a:

| W OR SED | YEAR MODEL | MAKE TRADE NAME | NO. CYL. | BODY TYPE | MODEL # OR SERIES | VEHICLE I.D.# |
|---|---|---|---|---|---|---|
| | 2005 FRONTIER | NISSAN TRUCK | 6 | 4 DOOR | | 1N6AD07U65C448487 |

tend to use the Vehicle primarily for: ☑ personal, family, or household purposes ("personal use") ☐ commercial, business, agricultural, or other non-personal uses ercial use").

| | | |
|---|---|---|
| **IUAL ICENTAGE E** THE COST OF YOUR CREDIT AS A YEARLY RATE. **8.25 %** | **Your payment schedule will be:** | |

| Number of Payments | Amount of Payments | When Payments are Due: |
|---|---|---|
| 72 | 519.38 | 07/25/2006 |
| N/A | N/A | Monthly Beginning N/A |

**ANCE ARGE** THE DOLLAR AMOUNT THE CREDIT WILL COST YOU.
$ 8073.82

Insurance: CREDIT LIFE INSURANCE AND CREDIT DISABILITY INSURANCE ARE **NOT REQUIRED** TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST:

| Type | Term | Premium | Signature |
|---|---|---|---|
| Credit Life Insurance | N/A mos. | $ N/A | I want credit life insurance only |
| Disability Insurance | N/A mos. | $ N/A | I want disability insurance only |
| Credit Life and Disability | N/A mos. | $ N/A | I want credit life and disability insurance |
| Joint Credit Life Insurance | N/A mos. | $ N/A | We want joint credit life insurance |
| Joint Credit Life and Single Disability Insurance | N/A mos. | $ N/A | We want joint credit life and single disability insurance |

unt iced The amount of credit provided to you or on your behalf.
$ 29321.54

of Payments The amount you will have paid after you have made all payments as scheduled.
$ 37395.36

Sale The total cost of your purchase on credit including your down payment of $ 1500.00
$ 38895.36

ans an estimate

Security: You are giving a security interest in the Vehicle being purchased.
Late Charge: If the Vehicle is purchased for personal use, and a payment is not paid in full within 10 days after it is due, you will pay a late charge of the lesser of $10.00 or 5% of the unpaid balance of the installment.
Prepayment: If you pay off early, you will not have to pay a penalty.
See the other portions of this Contract for additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**ITEMIZATION OF AMOUNT FINANCED**

h Price (incl. accessories) $ 25798.00 + Sales Tax $ 1846.65 +
Trade-In Deficiency (item 5 if negative) $ N/A to N/A = Total Cash Price........ $ 27644.65 (1)

er charges included in this sale:
Vehicle Service Contract (Term) 72MOS/75000MI to PARTNERS WARRANTY $ 1949.00
Dealer Documentary Fee ..................................................... $ 273.00
Other (describe) N/A to N/A $ N/A
Other (describe) N/A to N/A $ N/A
Other (describe) N/A to N/A $ N/A
Other (describe) N/A to N/A $ N/A
il ............................................................................. $ 2222.00 (2)
ments made on your behalf to Public Officials for Official Fees .................. $ 504.89 (3)
h Sale Price (sum of items 1, 2 and 3) ....................................... $ 30371.54 (4)
le-in 1994 FORD EXPL $ 1500.00 – $ N/A = $ 1500.00 (5)
      Yr. Make & Model        Gross Allowance      Payoff       Net Trade-In (Deficiency)
d Down Payment includes:
Net Trade-In (item 5) (if negative, insert $0) .................................. $ 1500.00
Cash Down Payment (Includes manufacturer's rebate of $ N/A assigned to Seller) $ N/A
Total Down Payment (a + b) .................................................... $ 1500.00 (6)
aid balance of Cash Sale Price (item 4 less item 6) ........................... $ 28871.54 (7)

ments made to others on your behalf:
Amounts paid to Insurance Companies for Insurance Premiums:
Credit Insurance Premiums $ N/A + (2) Property Insurance Premiums $ N/A
il .............................................................................. $ N/A (8a)
Amounts paid to others:
) To: OWNER GUARD for: GAP $ 450.00 (8b)
) To: N/A for: N/A $ N/A (8c)
) To: N/A for: N/A $ N/A (8d)
l Amount Paid to Others (Sum of items 8(a) through 8(d)) ...................... $ 450.00 (8)
eller may be retaining a portion of this amount.
ount Financed – Amount of credit you will get (item 7 plus item 8) ............. $ 29321.54 (9)

e "Amount Financed" exceeds $25,000 or if the Vehicle is purchased primarily for commercial use, the "Amount Financed" is also the "Final Cash Price Balance" and al of Payments" is also the "Time Balance."

perty Insurance: You promise to keep the Vehicle insured for its full value against loss or damage with loss payable endorsement in our favor during the time any amount d under this Contract. YOU MAY OBTAIN YOUR REQUIRED INSURANCE FROM ANY COMPANY ACCEPTABLE TO US. If you purchase your insurance through he costs and items of coverage are as follows:
llision (actual cash value of loss less $ N/A deductible) and Comprehensive TERM N/A months PREMIUM $ N/A
cluding fire and theft (cash value of loss less $ N/A deductible)
her (describe) N/A N/A months $ N/A

uy insurance through your own agent, the cost is not included in this Contract. Please give us the name and telephone number of the agent you choose:

Name CARLOS ARIAS        Telephone Number (520)294-2828
Address 536 W UTAH ST        City TUCSON        State AZ 85706

to Pay: By signing below, you promise to pay us the Amount Financed, together with finance charges calculated thereon at the Annual Percentage Rate. You agree to make ments to us as set forth in the Payment Schedule shown above. Your final payment may change, depending upon your payment habits. We will apply each payment first to finance charges and ... balance ... means ... charge will ... 2nd ... 2nd ... Entitled ...
y adjustments in your total finance charge will be reflected in your final payment. If a payment is not paid in full within 10 days ...
If the Vehicle is purchased for commercial use, the late charge ...

r = Seller's written warranty or service contract; (2) if the Vehicle is purchased for commercial use, Seller makes no implied warranty of merchantability or of fitness for any particular purpose. The Vehicle is sold to you AS IS, except for any express warranties made by Seller, on its own behalf, or by the manufacturer of the Vehicle or of any component parts; (3) In all cases, Seller shall not be liable for any consequential damages arising from any breach of any warranty, express or implied.

(b) For "used" vehicles:

(1) Used Car Implied Warranty of Merchantability:

The Seller hereby warrants that the vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. You (the Purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.

(2) Waiver of Used Car Implied Warranty of Merchantability:

ATTENTION PURCHASER: Sign here only if the dealer told you that this vehicle has the following problem(s) and that you agree to buy the vehicle on those terms:

ATENCION COMPRADOR: Firme aqui solamente si el venderor le dijo que el vehículo tiene el siguiente problema(s) y que usted conviene de compra el vehículo bajo estos términos:

| | | |
|---|---|---|
| 1. N/A | Buyer/Comprador _____ | Date 06/10/2006 |
| 2. N/A | Buyer/Comprador _____ | Date 06/10/2006 |
| 3. N/A | | |

(3) The vehicle is sold "AS IS – NOT EXPRESSLY WARRANTED OR GUARANTEED" unless Seller gives you a separate written instrument showing the terms of any warranty or service contract given by Seller on its own behalf. If the Vehicle is purchased for personal use, Seller makes no implied warranty of fitness for any particular purpose, and the implied warranty of merchantability is limited to 15 days or 500 miles after delivery, whichever is earlier, as set forth above, unless Seller also gives you a written warranty, on its own behalf, with respect to the Vehicle, or, at the time of the sale or within 90 days thereafter, Seller enters into a service contract, in its own behalf, with you which applies to the Vehicle. In that event, any implied warranties arising from the sale of the Vehicle shall be limited to the duration of Seller's written warranty or service contract. If the Vehicle is purchased for commercial use, Seller makes no implied warranty of fitness for any particular purpose, and the implied warranty of merchantability is limited to 15 days or 500 miles after delivery, whichever is earlier. In all cases, Seller shall not be liable for any consequential damages arising from any breach of any warranty, express or implied, except for a breach of the implied warranty of merchantability.

NOTICE TO BUYER: 1. Do not sign this Contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the Contract you sign.

Annual Percentage Rate (APR) for the installment sale of an automobile may be negotiated with the dealership; and the dealership may receive some portion of the finance charge or receive other compensation for providing the financing.

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT, UNLESS DESCRIBED IN ITEM 11 AND AN APPROPRIATE PREMIUM CHARGE IS SHOWN IN ITEM 8(A) ABOVE.

SELLER IS REGULATED AND COMPLAINTS CONCERNING THIS CONTRACT MAY BE ADDRESSED TO:

ARIZONA DEPARTMENT OF FINANCIAL INSTITUTIONS
2910 N. 44th STREET, SUITE 310
PHOENIX, ARIZONA 85018
TELEPHONE: (602) 255-4421

Dated this ___10th___ day of JUNE **JUN 14 2006**

Buyer(s) Acknowledge(s) receipt of a fully completed copy of this Contract.

*BUYER _____
*BUYER _____

By _____  MANAGER

OTHER OWNERS: If a person shown on the certificate of title as an owner of the vehicle does not want to be separately liable to pay this debt, please sign below to give us a security interest in the Vehicle, its proceeds, and physical damage insurance policy and any refunds of insurance premiums.

| SIGNATURE | DATE | SIGNATURE | DATE |
|---|---|---|---|

THE TRANSACTION WHICH IS THE SUBJECT OF THIS CONTRACT ☐ IS OR ☐ IS NOT SUBJECT TO A FEE RECEIVED BY A BROKER FROM THE SELLING MOTOR VEHICLE DEALER. IF APPLICABLE, THE NAME OF THE BROKER IS: _____

ASSIGNMENT

Seller hereby assigns this Contract to the below designated Assignee under the terms and conditions of a Dealer Agreement (☐ Recourse ☐ Non-Recourse) previously entered into between Seller and Assignee, and in any event in accordance with the terms, conditions and warranties of the Seller's Assignment and Warranty on the reverse side hereto.

1 CLICK FORD INC.     06/10/2006
SELLER     DATED     BY

Assignee DM FEDERAL CREDIT UNION     Branch P.O. BOX 15115 TUCSON AZ 85708

AUTHORIZED SIGNER     TITLE     FINANCE

ORIGINAL

Form No. 12 ©2005 Az Auto Dealers Assoc. (Rev. 9/05)

| For Dealer Proceeds Only Line 7 |
|---|
| $ 28871 54 |
| ALL RIGHTS RESERVED |

# ADDITIONAL TERMS, AGREEMENTS AND CONDITIONS

1. BUYERS GUIDE FOR USED VEHICLES: THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

LA INFORMACION QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHICULO ES PARTE DE ESTE CONTRATO. LA INFORMACION EN LA FORMA DE VENTANILLA ELIMINA CUALQUIER DISPOSICION CONTARIA EN ESTE CONTRATO.

2. (a) If the Vehicle is purchased primarily for personal use: NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

(b) If the Vehicle is purchased for commercial use, you will not assert any claim or defense against an Assignee of this Contract except of a type which may be asserted against a holder in due course of a negotiable instrument.

3. ADDITIONAL COVENANTS OF BUYER: You will (a) store the Vehicle at your address on the face hereof; (b) permit us to examine the Vehicle at any time; (c) maintain the Vehicle in good condition and repair; (d) not permit the Vehicle to be permanently removed from the State of Arizona without our prior written consent; (e) not permit the Vehicle to be attached or other process to be levied thereon; (f) not create or permit to be created any lien or encumbrance or adverse claim of any character whatsoever, whether for storage, repairs, or otherwise, justified or unjustified; (g) not attempt to sell, rent, lease, assign, or otherwise transfer your right, title, or interest in the Vehicle or this Contract without our written permission; and (h) pay all taxes and assessments of every character levied or assessed against the Vehicle, this Contract and the indebtedness represented hereby. You authorize us, at our option and without any obligation to do so, to discharge any and all taxes, liens, security interests or other encumbrances at any time levied or placed on the Vehicle. You hereby agree to reimburse us on demand for any expense incurred by us pursuant to this authorization, plus interest on all sums so expended until paid at a rate equal to the Annual Percentage Rate.

Time is of the essence of this Contract. Our acceptance of partial payments shall not in any manner modify the terms of this Contract and such acceptance shall not be construed as a waiver of any subsequent defaults on your part nor shall it waive the "time is of the essence" provision. Any payment amount we receive in addition to or in excess of a regular scheduled payment may be applied first to accrued late charges and collection charges (if any) and then to finance charges due and to the unpaid balance outstanding. You may not assign this Contract except with our prior written consent. You agree that you will not use or permit the Vehicle to be used for any unlawful purpose, nor to be used for hire, nor will you allow any person to operate or use the Vehicle who is not allowed under the terms of the insurance policies herein required to so operate or use the Vehicle.

Any notice required to be given to you shall be deemed reasonable notification if mailed by ordinary mail, postage prepaid, to your mailing address given herein or to your most recent address as shown by a "Notice of Change of Address" on file with us whether or not actually received by you, or if given in any other manner which results in your actual receipt of such notice.

4. INSURANCE: You agree: (a) to keep the Vehicle insured at your own expense against loss by fire, theft, collision and such other risks as we shall designate; (b) such insurance shall cover our interest in the Vehicle and shall be in force so long as any part of the balance owed under this Contract remains unpaid; and (c) such insurance is to be placed with insurance companies reasonably acceptable to us and loss thereon is to be paid to you and us as each party's interest may appear. You hereby assign to us the proceeds of all such insurance to the extent of the unpaid balances hereunder and direct any insurer to make payments directly to us. You hereby request and authorize us, at our option and without obligation to do so, to place and pay for insurance on the Vehicle upon your failure, after having been requested to do so; to provide insurance satisfactory to us and to pay the premium either for such insurance or similar insurance protecting us only, adding same to the unpaid balance then owing or by an advance which constitutes additional indebtedness and is secured hereunder and is added to the remaining installments or is payable in additional installments, due on this Contract. The policies therefor shall be held by us until this Contract is fully performed. You agree to reimburse us on demand for any payment made or any expenses incurred by us pursuant to the foregoing authorization, together with interest thereon from disbursement until paid at a rate equal to the Annual Percentage Rate. In the event of a loss, you agree that we may collect the proceeds from such insurance and apply the proceeds towards replacement of the Vehicle or payment of your obligation under this Contract. If we retake possession of the Vehicle, the insurance policies thereon, financed under this Contract, shall become our sole property and you shall have no further interest therein. In the event of any default hereunder, we are authorized to cancel any insurance and credit any premium refund against said unpaid balances.

5. ADDITIONAL CHARGES FOR DELINQUENT PAYMENTS: If you fail to make timely payments under this Contract, and if such delinquency requires collection efforts by us, you agree to pay reasonable collection charges and costs incurred by us, which charges may include specific charges for collection calls and collection letters.

6. PREPAYMENT: You may prepay the principal balance in full or in part at any time without penalty, provided all finance charges and other charges accrued to the date of prepayment are paid.

7. COMPUTATION OF FINANCE CHARGES: Finance charges accrue on a daily basis. A day shall be counted as 1/360th of a year, unless the Assignee of this Contract uses a method of computation which counts a day as 1/365th or 1/366th of a year, in which event the method of computation used by the Assignee for retail installment transactions such as yours on the date of assignment of this Contract to such Assignee shall apply.

8. EVENTS OF DEFAULT: (a) Any one of the following shall constitute an Event of Default: (1) Your failure to pay when due any indebtedness secured hereby; (2) If any warranty, representation or statement made herein or furnished to us by you or on your behalf in connection with this Contract proves to have been false in any material respect when made or furnished; (3) The commencement of any bankruptcy, arrangement, reorganization, insolvency, receivership or similar proceedings by or against any guarantor or surety for you; (4) The occurrence of any adverse change in your financial condition deemed material by us, or if, in our judgment the Vehicle becomes unsatisfactory in character or value, or if we reasonably deem ourselves insecure; (5) If you default in performing any of your obligations, promises, covenants or agreements contained herein or in any other agreement, paper or document given by you to us. (b) Any one of the following shall constitute an Event of Default if, in our opinion, such occurrence, by itself, or such occurrence together with surrounding circumstances, materially increases our risks with regard to repayment of the indebtedness due: (1) Your death or incompetence; (2) If the Vehicle is levied upon or seized upon under any levy, attachment, garnishment, writ or other legal process, or if any lien is attached thereto; (3) If the Vehicle is lost, stolen, or suffers substantial damage destruction; (4) If the Vehicle is sold, rented, assigned or otherwise transferred without our written permission.

9. DEBTOR'S LIABILITY FOR FAILURE TO RETURN VEHICLE: It is unlawful to fail to return a motor vehicle subject to a security interest within 30 days after receiving notice of default. In the event of default, a notice of default will be mailed to you at the address on this Contract. However, nothing in this paragraph imposes any contractual obligation upon us to give you notice of default. Our failure to do so will not be a breach of this Contract and will not limit or impair any of our rights or remedies in the event of your default, as provided below. It is your responsibility to keep the listed address current. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony. Assuming you have no history of prior felony convictions, such crime is punishable by a term of imprisonment of up to 1 year, plus a $150,000 fine, and all applicable surcharges.

10. RIGHTS AND REMEDIES: Upon the happening of any of the foregoing Events of Default and at any time thereafter, we may, at our option, and without notice to you, declare all of your indebtedness to us to be immediately due and payable, and we shall have the rights, duties and remedies of a secured party, and you shall have the rights and duties of a debtor, under the Uniform Commercial Code as adopted in the State of Arizona, and without limitation thereto, we shall have the following specific rights: (a) To take immediate possession of the Vehicle without notice or resort to legal process and for such purpose to enter upon any premises on which the Vehicle or any part thereof may be situated and to remove the same therefrom or, at our option, to render the Vehicle unusable; (b) To make or have made any repairs deemed necessary or desirable, the cost of which shall be charged to you; (c) If we take possession of the Vehicle, you will have the right to redeem the Vehicle by paying the net amount you owe on this Contract. If you do not redeem the Vehicle, we will, after giving notice to you and any other party entitled thereto, dispose of the Vehicle in a commercially reasonable manner, which may include either a public sale or a private sale. It is agreed that 10 days' notice of any such sale shall be reasonable. The proceeds of the sale, less allowed expenses, will be used to pay the amount still owed on this Contract. Allowed expenses are those reasonable expenses incurred as a direct result of retaking the Vehicle, holding it, preparing it for sale and selling it. In addition, if we hire an attorney who is not our salaried employee to collect what you owe, you agree to pay reasonable attorney's fees and court costs. If the proceeds of the sale, less allowed expenses, are not sufficient to pay the net amount still owed on this Contract, then, to the extent permitted by law, we may recover the deficiency with interest at the Annual Percentage Rate from you or anyone who has succeeded to your obligation. If there is money left over (surplus), it will be paid to you or whoever else is legally entitled to it. If, during repossession of the Vehicle, we come into possession of any property which is not security for this Contract, we will hold it for you. If you do not claim the property within 30 days after we have repossessed the Vehicle, we may dispose of the property in any manner we may select. You agree that we will have no further liability to you for this property.

11. GENERAL: This Contract shall be governed by the laws of the State of Arizona. Any provisions found to be invalid shall not invalidate the remainder hereof. Waiver of any default shall not constitute waiver of any subsequent default. All words used herein shall be construed to be of such gender and number as the circumstances require and all references herein to you shall include all other persons primarily or secondarily liable hereunder. This Contract shall be binding upon the heirs, personal representatives, successors and assigns and shall inure to the benefit of our successors and assigns. This Contract, together with any other written agreements contemporaneously executed by you and us, constitutes the entire agreement between you and us and may not be altered or amended unless made in writing and signed by you and us.

12. SELLER'S RIGHTS IN ABSENCE OF CREDIT APPROVAL: (a) You agree to furnish us any documentation necessary to verify information contained in the credit application. (b) You acknowledge that it may take a few days for us to verify your credit and assign this Contract. In consideration of our agreeing to deliver the Vehicle, you agree that if we are unable to assign this Contract to any one of the financial institutions with whom we regularly do business pursuant to terms of assignment acceptable to us, we may cancel this Contract; (c) In the event we cancel this Contract, we shall give you notice of the cancellation upon receipt of such notice you shall immediately return the Vehicle to us. In such event, the vehicle shall be returned to us in the same condition as when sold, reasonable wear and tear excepted, and this Contract shall then be rescinded. You agree, upon rescission of this Contract, to restore to

notice of the cancellation. Upon receipt of such notice, you shall immediately return the Vehicle to us in the same condition as when sold, reasonable wear and tear excepted, and this Contract shall then be deemed cancelled. We agree, upon cancellation of this Contract, to restore to you all consideration we received in connection with this Contract, including any trade-in vehicle. (d) In the event the Vehicle is not immediately returned to us upon notice of our cancellation of this Contract, you agree to pay and shall be liable to us for all expenses incurred by us in obtaining possession of the Vehicle, including attorney's fees, and we shall have the right to repossess the Vehicle with free right of entry wherever the Vehicle may be found. (e) While the Vehicle is in your possession, all terms of this Contract, including those relating to use of the Vehicle and insurance for the Vehicle, shall be in full force and all risk of loss or damage to the Vehicle shall be assumed by you, you shall pay all reasonable repair costs related to any damage sustained by the Vehicle while in your possession or control of and until the Vehicle is returned to us.

## SELLER'S ASSIGNMENT AND WARRANTY

For value received, Seller hereby sells, assigns and transfers to Assignee, all rights, title and interest in and to this Contract, the Vehicle and equipment therein described and all monies due and to become due hereunder. SUCH ASSIGNMENT SHALL BE PURSUANT TO THE REPRESENTATIONS, WARRANTIES AND OTHER PROVISIONS OF THE EXISTING DEALER AGREEMENT WITH ASSIGNEE. In the event there is no existing dealer agreement with Assignee, Seller warrants that the signature of the Buyer(s) herein are genuine, that Seller holds title to the Vehicle, that the cash down payment shown has actually been received by Seller and no part thereof was loaned to Buyer(s) by or through Seller, and that the Vehicle is free from any liens and/or encumbrances except the lien of the security interest created by this Contract, that the Vehicle has been delivered into the possession of the Buyer(s), that Buyer(s) was of legal age and competent to execute this Contract on the date hereof, that the Vehicle has not salvaged, and that, if this transaction is subject to regulation by any state or federal law or regulation, including, but not limited to, the Federal Truth in Lending Act, Magnuson-Moss Warranty - Federal Trade Commission Improvement Act, or Equal Credit Opportunity Act, the transaction was consummated in strict compliance with such law(s) and any regulations promulgated pursuant thereto and that before offering to sell this Contract to Assignee, any period, wherein Buyer(s) had the right to rescind such transaction, had expired and such Buyer(s) had not rescinded the transaction, that this Contract and the debt evidenced thereby is not, and will not be subject to any claims, disputes, complaints, offsets, counterclaims or defenses of any kind during the time the said debt remains unpaid, and that Seller has taken all action necessary to perfect a first lien purchase money security interest in Seller or its Assignee.

Seller unconditionally guarantees to Assignee the full and immediate payment and performance of this Contract with respect to which any one or more of the foregoing warranties or representations is breached or false and hereby agrees to repurchase this Contract upon the occurrence of any such breach of warranty or false representation immediately, upon demand by Assignee, for a cash amount equal to the net unpaid balance of the Contract by direct cash payment from Seller to Assignee and not by recourse to or adjustment in any dealer reserve or other such accounts; Seller further hereby agrees to indemnify and hold Assignee harmless from all loss, claims, damages, costs, expenses and attorney's fees incurred or sustained by Assignee resulting from or arising out of such obligations under this Contract determined to be due to any claim or defense Buyer(s) may now or in the future have against Seller relating to the transaction herein described. If the Assignee's and/or Seller's right and duties hereunder are referred to an attorney for interpretation or enforcement, the prevailing party shall be entitled to receive and collect from the losing party all court costs and expenses incurred plus reasonable attorney's fees.

Seller waives all demand and notices of default and consents that, without notice to the Seller, Assignee may extend the time of payments or compound or release by operation of law or otherwise any rights against Buyer(s) or any other obligor. Assignee shall not be bound to take any steps necessary to preserve any rights in this Contract or any accompanying agreements or documents against prior parties, which Seller hereby agrees to do.

IT IS EXPRESSLY UNDERSTOOD AND AGREED that any method of assignment herein provided shall not be deemed to relieve Seller of and from any liability for the breach of warranties, representations or agreements contained herein or in this Contract.

## GUARANTY

Each of the undersigned ("Guarantor"), jointly and severally, guarantees payment of all amounts owing under this Contract and the payment upon demand of the entire amount owing on this Contract in the event of default in payment by Buyer(s) named therein. Guarantor waives notice of performance, demand for performance, notice of nonperformance, protest, notice of protest, notice of dishonor, notice of acceptance of this Guaranty, of any extensions in time of payment, of sale of any of the collateral and of all other notices to which the undersigned would be otherwise entitled by law and agrees to pay all amounts owing hereunder upon demand, without requiring any action or proceeding against Buyer(s), and specifically waives any right to require action against Buyer(s) as provided in ARIZ. REV. STAT. § 12-1641, et seq. Guarantor agrees to deliver to Seller or, after assignment, to Assignee, timely financial statements and any other information relating to the Guarantor's financial condition as may be reasonably requested. GUARANTOR HEREBY ACKNOWLEDGES RECEIPT FROM SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

_____
Date

_____
Guarantor

_____
Date

_____
Guarantor

MARITAL COMMUNITY JOINDER. The undersigned spouse of Guarantor joins in the execution of this Guaranty for the purpose of binding the marital community of Guarantor and the undersigned, in accordance with ARIZ. REV. STAT. § 25-214 or other applicable law; UNDERSIGNED SPOUSE OF GUARANTOR ACKNOWLEDGES RECEIPT FROM SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

_____
Date

_____
Spouse of Guarantor

# ARIZONA CERTIFICATE OF TITLE



**Motor Vehicle Division**
ADOT
48-7200 R09/03

Inventory Control
6228464

| Vehicle Identification Number | Year | Make | Model | Body Style |
|---|---|---|---|---|
| 1N6AD07U65C448487 | 2005 | NISS | | 34PU |

| First Registered | List Price | Mobile Home Manufacturer | Unit Number |
|---|---|---|---|
| 10/2005 | 024150 | | |

DM FEDERAL CREDIT UNION
PO BOX 15115
TUCSON AZ  85708

| Title Number | Issue Date | Film Number | Odometer Reading (no tenths) * |
|---|---|---|---|
| AE06006194055 | 07132006 | G194AE0617 | 0012606 A |

| Previous Title Number | State | Issue Date | Previous Film Number | |
|---|---|---|---|---|
| ELTA006166288 | AZ | 06152006 | F292027H66 | |

* A - Actual Mileage
B - Mileage in excess of the odometer mechanical limits
D - NOT Actual Mileage, WARNING ODOMETER DISCREPANCY

**Arizona Brands**

| Previous Brand | State  Previous Brand | State  Previous Brand | State  Other States With Brands |
|---|---|---|---|

Owners/Lessees
**ANTOINETTE LUCIA MOUSTAFI**
**6010 S RANDALL BLVD 19**          **TUCSON**                    **AZ 85706**

Lienholders
**FIRST LIEN-**
**DM FEDERAL CREDIT UNION**                    **LIEN DATE:  06102006**

**PO BOX 15115**                              **TUCSON**          **AZ 85708**

LIEN RELEASE

| Lienholder Name | | Acknowledged before me this date | Notary Public Signature | | |
|---|---|---|---|---|---|
| Lien Amount | Lien Date | Lienholder Signature | Date | County | State | Commission Expires |

VOID WITHOUT EAGLE WATERMARK OR IF ALTERED OR ERASED

# Wholesale/Retail Breakdown

# Kelley Blue Book
# Mar-Apr 2007

2005 Nissan Frontier Nismo Crew Cab Short Bed .......................... $15,100/$18,050

VIN: 1N6AD07U65C448487

| | |
|---|---|
| V6 4.0 Liter................................................................... | Included |
| Automatic ................................................................... | 600/800 |
| 2WD .......................................................................... | Included |

### *** Equipment ***

| | |
|---|---|
| Air Conditioning............................................. | 450/600 |
| Power Steering............................................... | 150/200 |
| Power Windows.............................................. | 225/300 |
| Power Door Locks.......................................... | 175/235 |
| Tilt Wheel..................................................... | 200/265 |
| Cruise Control............................................... | 150/200 |
| AM/FM Stereo............................................... | Included |
| Single Compact Disc...................................... | 200/265 |
| Dual Front Air Bags...................................... | Included |
| ABS (4-Wheel).............................................. | 200/265 |
| Roof Rack..................................................... | 100/135 |
| Bed Liner...................................................... | 150/200 |
| Towing Pkg .................................................. | 300/400 |
| Alloy Wheels ................................................ | 275/365 |

| | |
|---|---|
| Total Value without mileage............................................ | $18,275/$22,280 |
| Mileage adjustment (22,200) miles................................... | 1,200 |

| | |
|---|---|
| *** Total Wholesale/Retail Value ...................................................... | $19,475/$23,480 |

**Vantage West Credit Union**

Mar-Apr 2007 Kelley Blue Book KARPOWER values for Arizona
Values are subjective opinions. Kelley Blue Book assumes no responsibility for errors or omissions
© Copyright Kelley Blue Book 2007, all rights reserved